STATE v. BULLOCK.

1. A WITNESS PAY CERTIFICATE need not be supported by affidavit that services were rendered.

2. WITNESS PAY CERTIFICATE—SUPERVISOR—TAXES.—COUNTY TREASURER must pay a witness pay certificate signed by Judge and countersigned by clerk of Court, but is only required to take it for taxes when approved by supervisor.

3. FORGERY—PLEADINGS—INDICTMENT.—A WITNESS PAY CERTIFICATE is the subject of forgery, and to convict for issuing one and signing the name of the Circuit Judge, it is not necessary to allege that it had been indorsed by the payee. Elements of forgery stated.

4. IBID.—IBID.—AN INDICTMENT against a clerk of Court for forging the name of another is a prosecution against him as an individual, and need not set out his official capacity.

5. IBID.—WORDS AND PHRASES.—The words, "writings or paper writing," used in the statutes in defining the subjects of forgery, include a witness pay certificate, although such paper has been provided by statute since the enactment of the defining words.

6. THE FORM OF A WITNESS PAY CERTIFICATE has not been provided by statute.

7. CRIMINAL LAW—PRACTICE—INDICTMENT.—Solicitor may hand out an indictment without previous arrest of defendant on warrant issued by magistrate, supported by affidavit. *State* v. *Bowman*, 43 S. C., 108, *affirmed*.

Before BENET, J., Abbeville, June, 1898.    Reversed.

Indictment against W. R. Bullock for forgery.    From order quashing indictment, State appeals.

*Assistant Attorney General* (for Solicitor Ansel), for appellant, cites: *Affidavit is not necessary to prove witness fees:* Gen. Stat., 623; 21 Stat., 736. *Writing in question included in definition of forgery:* Crim. Code, 295. *Solicitor may send out indictment without commitment by magistrate:* 43 S. C., 112.

*Messrs. Ellis G. Graydon* and *Frank B. Gary*, contra, cite: *Claim of a witness for fees must be established by affidavit:* Gen. Stat., 623, 622, 605; Rev. Stat., 791, 642. *Witness pay certificate must be approved by supervisor.* Rev. Stat., 677; 21 Stat., 481. *Acts defining subject of forgery do not include witness pay certificate:* 4 Stat., 335, 339, 543; 11 Stat., 366, 397; Rev. Stat. 1872, 722; Gen. Stat., 2527. *Statutes prescribe no form for witness certificate:* Rev. Stat., 677, 791. *Indictment not based on arrest warrant and affidavit confers no jurisdiction:* 9 S. C., 309; 43 S. C., 108, not good law. *Certificate not indorsed; could not be passed, and defrauding no one was not subject of forgery:* 8 Am. St. R., 463; 14 Cox, 574; 44 La. Ann., 962.

Mar. 6, 1899.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    The respondent was tried at June term, 1898, at Abbeville, for the crime of forgery.    Upon a

demurrer to the indictment by the defendant, who is now here as respondent, Judge Benet ordered the indictment quashed. The State appeals from such order. In order that we may refer to the indictment, it is thought best to reproduce it, and it is as follows: "The State of South Carolina, county of Abbeville. At a Court of General Sessions, begun and holden in and for the county of Abbeville, in the State of South Carolina, at Abbeville Court House, in the county and State aforesaid, on the third Monday of January, in the year of our Lord 1898. The jurors of and for the county aforesaid, in the State aforesaid, upon their oath present: That W. R. Bullock, late of the county and State aforesaid, on the first day of November, in the year of our Lord 1897, with force and arms, at Abbeville Court House, in the county and State aforesaid, did falsely make, forge and counterfeit, cause and procure to be falsely made, forged and counterfeited, and willingly act and assist in the false making, forging and counterfeiting, a certain writing, and instrument of writing, commonly called a witness pay certificate, of the tenor as follows, that is to say: No. 443. The State of South Carolina, Abbeville County. I, W. R. Bullock, C. C. P. & G. S. for Abbeville County, S. C., do certify that Emma Tinch attended as a material witness for the State five days at September Court, 1897, and traveled twenty miles, and is entitled to $2.50. W. R. Bullock, Clerk. I certify that the above services were rendered. O. W. Buchanan, presiding Judge. With intent to defraud Frank Nickles and Abbeville County, against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid. And the jurors aforesaid, upon their oath aforesaid, do further present that the said W. R. Bullock, on the first day of November, in the year of our Lord 1897, with force and arms, at Abbeville Court House, in the county of Abbeville and State aforesaid, having in his possession a certain writing and instrument of writing, commonly called a witness pay certificate, of the tenor as follows, that is to say: No. 443. The State of

South Carolina, Abbeville County.   I, W. R. Bullock, C. C.
P. & G. S. for Abbeville County, S. C., do certify that Emma
Tinch attended as a material witness for the State five days
at September Court, 1897, and traveled twenty miles, and is
entitled to $2.50.   W. R. Bullock, Clerk.   I certify that the
above services were rendered.   O. W. Buchanan, presiding
Judge.   Did falsely make, forge and counterfeit, cause and
procure to be falsely made, forged and counterfeited, and
willingly act and assist in the false making, forging and
counterfeiting the same, by then and there writing, signing
and forging the name of O. W. Buchanan to said pay certifi-
cate above the words 'Presiding Judge,' with intent to de-
fraud Frank Nickles and Abbeville County, against the form
of the statute in such case made and provided, and against
the peace and dignity of the same State aforesaid.   And the
jurors aforesaid, upon their oath aforesaid, do further pre-
sent, that the said W. R. Bullock, on the first day of Novem-
ber, in the year of our Lord 1897, with force and arms, at
Abbeville Court House, in the county of Abbeville and State
aforesaid, did willfully utter and publish as true, a certain
false, forged and counterfeited writing, and instrument of
writing, commonly called a witness pay certificate, of the
tenor as follows, that is to say: No. 443.   The State of
South Carolina, Abbeville County.   I, W. R. Bullock, C. C.
P. & G. S. for Abbeville County, S. C., do certify that Emma
Tinch attended as a material witness for the State five days
at September Court, 1897, and traveled twenty miles, and is
entitled to $2.50.   W. R. Bullock, Clerk.   I certify that the
above services were rendered.   O. W. Buchanan, presiding
Judge.   He, the said W. R. Bullock, then and there well
knowing the same to be forged, with intent to defraud Frank
Nickles and Abbeville County, against the form of the stat-
ute in such case made and provided, and against the peace
and dignity of the same State aforesaid.   J. A. Mooney,
acting solicitor."

The order passed by Judge Benet was as follows: "A mo-
tion was made before me to quash the indictment in the

above stated case on several grounds. After hearing argument of counsel for defendant, and of the solicitor for the State, I am satisfied that the indictment ought to be quashed, and the objection thereto by way of demurrer sustained, on the following grounds: 1st. Because it does not appear that any affidavit was filed proving the claim of witness for fees. 2d. Because the said certificate set out in the indictment did not purport to have been approved by the county supervisor. 3d. Because there does not appear to have been any real or simulated indorsement or assignment by the payee. Without these prerequisites the county treasurer would not have had any right to pay the said certificate. It was, therefore, incomplete and void as a pay certificate and could not deceive anybody. It was not such a paper or instrument of writing as could be the subject of forgery. It was necessary to allege in the indictment that the defendant was, at time the certificate was alleged to have been forged, clerk of the Court; but I hold that this defect might be cured by amendment. It is, therefore, ordered and adjudged, that the said indictment be quashed and the proceedings dismissed, and that the said W. R. Bullock be discharged from his recognizance, and be allowed to go hence without day, so far as the above stated charge is concerned. June 17th, 1898."

The following are the grounds of appeal: 1st. Because his Honor erred in holding that "because it does not appear that an affidavit was filed proving the claim of the witness for fees," that, therefore, the paper alleged to be forged was not such a paper as was the subject of forgery, and that, therefore, the indictment should be quashed. 2d. Because the Circuit Judge erred in holding, "Because the said certificate, set out in the indictment, did not purport to have been approved by the supervisor," and that, therefore, the paper charged to be a forgery was not the subject of forgery. 3d. Because the Circuit Judge erred in holding, "Because there does not appear to have been any real or simulated indorsement or assignment by the payee," and that, therefore, the

paper charged to be forgery was not such a paper as was the subject of forgery, and that the indictment should, therefore, be quashed. 4th. Because the Circuit Judge erred in quashing the indictment herein, the said paper or certificate alleged to have been forged being such a paper as was the subject of forgery.

The respondent duly gave notice that at the hearing of the appeal taken by the State, he would ask this Court to sustain the order made by Judge Benet on the following grounds: I. Because at the time the act to define and punish the crime of forgery was passed, no such certificate as that set out in the indictment had been provided for by law; and, therefore, the said act defining and punishing forgery could not be held to include a paper which had no legal existence at the time of the passage of the said act, but was provided for by a subsequent statute. II. Because the certificate set out in the indictment is not in the form prescribed by the statute, and would, for that reason, if properly signed and certified, have been null and void. III. Because the statute makes no provision and prescribes no form for a witness ticket, and, therefore, such ticket would be null and void, even if properly signed. IV. Because the Court of General Sessions has not jurisdiction to try a criminal case, especially one like that before the Court, unless the proceeding has been commenced in the regular way by affidavit and warrant issued by a magistrate, unless there was some special reason for taking a different course, and no such reason has been shown or even claimed to exist in this case. V. Because the indictment is fatally defective in not alleging that the defendant was clerk of the Court.

We will first pass upon the grounds of appeal presented by the State. First. It is objected that the Circuit Judge was in error in holding that the indictment was faulty, because it did not appear that the witness pay certificate set out therein was supported by the affidavit of the witness for whose services as such the certificate was issued. It seems to us that the Circuit Judge was in error in this holding.

20—54

It will be admitted that the legislature of the State was empowered to prescribe how the services of a witness in the Court of General Sessions should be authenticated, and how it should be paid, but it is contended that the language used in the section of the law governing in such cases should be aided by another section of the law regarding claims against the county. To make our meaning clear, we shall state the sections as they read: "Section 676. Each county shall pay: 1. The fees of the grand and petit jurors while in attendance upon the Circuit Court. 2. Witnesses fees in the State cases for actual attendance upon the Circuit Courts as provided by law. 3. Fees of physicians testifying as experts before a coroner's jury or the Circuit Court. 4. Fees of sheriffs and clerks of court as provided by law. 5. Fees of county coroners allowed by law. 6. Fees or salaries of trial justices and constables. 7. The compensation of auditors, treasurers and county supervisors as provided by law. Section 677. That the fees allowed jurors, constables and witnesses shall be paid by the treasurer of the counties, *on the presentation to them of certificates signed by the presiding Judge and countersigned by the clerk of the Court, or be received by him in the payment of* all county taxes when duly approved by the county supervisor." Section 678, provides that the accounts of coroners, sheriffs and supervisors, and physician's or surgeon's fees for *post mortem,* shall be approved by the county board. Sections 690 and 691 provide that the fees in criminal cases of clerks of court, trial justices and other officers shall be approved by the board of county commissioners. But it is important to reproduce the exact language of section 691, which is as follows: "Section 691. No account shall be audited and ordered to be paid by the county board of commissioners for any labor performed, fees, services, disbursements or any other matter, unless it shall be made out in items, and accompanied with an affidavit attached thereto, and made by the person or officer presenting or claiming the same, that the said items are correct, and that the labor, fees, disbursements, services or other mat-

ter charged therein have been in fact done, made, rendered or are due, and that no part of the same has been paid or satisfied. * * * " The Circuit Judge has held that notwithstanding the language of section 677, above quoted, "that the fees allowed jurors, constables and witnesses shall be paid by the treasurer of the counties on the presentation to them of certificates, signed by the presiding Judge and countersigned by the clerk of the Court, * * * still before the county treasurer could pay such claims just quoted, they must be supported by the affidavit of the officer or individuals holding and presenting the same, as pointed out in section 691, which we have also quoted. As before stated, we think the Circuit Judge is in error in this construction of the law. Clearly the purpose of the legislature was to provide a speedy mode for the settlement of the fees of jurors, constables and witnesses in State cases, and they deemed that inasmuch as the services of jurors, constables and witnesses were rendered within the view of the presiding Judge and clerk of Court, that no better mode could be had in establishing their services than by the certificate of such presiding Judge, countersigned by the clerk of Court. In the acts passed by the legislature from time to time it has provided a speedy settlement of the fees of jurors and witnesses, so that those persons might not be subjected to any delay in receiving their compensation for such enforced services rendered by them to the State. In addition to all these views of this act, it seems to us that the legislature has negatived the view of the Circuit Judge by other actions. We have reproduced the section preceding that of 677, to wit: section 676, which enumerates certain services and officers each county shall pay; and it will be seen that the sections, succeeding section 677, provides specially for the approval of the claims of each and every class of these, by the county board of commissioners, *except jurors, constables and witnesses in State cases.*

The second ground of appeal alleges error in the order of the Circuit Judge, because he held that the witness pay certificate was not approved by the county supervisor of Abbe-

ville County.   This conclusion of the Judge is no doubt based upon the last provision of section 677.   The section as a whole reads thus: "Section 677.  That the fees allowed jurors, constables and witnesses shall be paid by the treasurer of the counties on the presentation to them of certificates, signed by the presiding Judge and countersigned by the clerk of the Court, *or be* received by him in payment of all county taxes when duly approved by the county supervisor."   We think the true view of this section is this: That jurors, constables and witnesses may receive the cash in payment of their respective claims, or that they may use such claims in the payment by them of taxes due by them to the county.   If they desire the cash from the county treasurer, they must have their claims certified by the presiding Judge, with the clerk of Court countersigning the same. If they desire to pay their county taxes with such claims, they must be approved by the county supervisor.   While, of course, any legislative construction of this section may not be conclusive of this matter, yet it ought to have some bearing upon it.   We find in 22 Statutes at Large, pp. 737 and 738, an act amending section 693 of the Revised Statutes of 1893, which provides that all claims not presented in five years shall be barred; and in so providing, this language is used: "and no claim audited and allowed by the county board of commissioners *or clerk of the Court,* for fees of witnesses and jurors, shall be paid by county treasurer unless the same is presented to him for payment in five years, &c."   This act was approved 21st day of February, 1898. The respondent, in this connection, suggests that the construction should not be influenced by the punctation mark of the comma which precedes the words, "or be received by him in the payment of all county taxes when duly approved by the county supervisor."   While we lay no stress upon the punctuation in question, it is a fact that it occurs in the section, and in our view is properly there.

The third exception of appellant suggests error in the Circuit Judge in holding that, because there does not appear to

have been any real or simulated indorsement or assignment of the payee of the witness certificate set out in the indictment, the paper alleged to have been forged was not the subject of forgery. By recurring to the statutes adopted in this State in years 1736-7, IV. Statute at Large; 1801, V. Stat. at Large; and 1845, XI. Stat. at Large, 366, it will be found that the last act was simplified by adopting language, in defining forgery, which was broad and comprehensive enough to include any species of forgery, without repeating the many classes enumerated in the first and second of said acts. When the laws of the State were codified in the years 1872, 1882 and 1893, the phraseology of the act of year 1845 was retained. So that now, in this State, the crime of forgery, so far as the statute law is involved, may be stated in this language (Crim. Code, 295): "Whoever shall be convicted of falsely making, forging or counterfeiting, or causing or procuring to be falsely made, forged or counterfeited, or of willfully acting or assisting in the false making, forging or counterfeiting of any writing or any instrument in writing, or of uttering or publishing as true any false, forged or counterfeited writing or instrument of writing, or of falsely making, forging or counterfeiting, altering, changing, defacing or erasing, or causing or procuring to be falsely made, forged, counterfeited, altered, changed, defaced or erased, any record or plat of land, or of willingly acting or assisting in any of the premises, with an intention to defraud any person, shall be guilty of forgery. * * * Section 296 relates to counterfeiting coins of gold or silver, and need not be reproduced. Thus it is seen that to falsely make a writing or paper of writing, or to utter and publish the same, with the intent to defraud some person, is the language in this statute with which we have to deal in determining whether the Circuit Judge is in error as here complained. We have already set out in this opinion the alleged paper writing or writings commonly called a witness pay certificate, with the forgery of which the defendant is charged. The name of the payee in said

paper writing is Emma Tinch, but it is not alleged in said indictment that said Emma Tinch, either by actual or simulated indorsement, assigned or transferred the same. It will be noticed, also, that in the indictment it is not alleged that the defendant forged the same with intent to defraud Emma Tinch, but it is alleged that he forged the same to defraud Frank Nickles and Abbeville County. As is well said in 9 Ency. Pleading and Practice, 550, in speaking of an indictment for forgery: "There are three essential elements in the crime of forgery, viz: first, a writing apparently valid; second, a fraudulent intent on the part of the accused; and third, the falsity of the writing, or the fact that the name signed thereto is fictitious; all of which elements must be alleged and proved." This instrument alleged to have been forged is commonly called a witness pay certificate, for such is the allegation of fact alleged in the indictment, which allegation of fact, alleged in the indictment in case of demurrer, must be accepted as true. When we look at section 677 of the Revised Statutes, which we have already quoted, it will be seen that the fees allowed by law for the services of a State witness, must be evidenced by the certificate, signed by the presiding Judge and countersigned by the clerk of the Court. This paper writing, by its tenor, shows it was signed in the name of O. W. Buchanan, as presiding Judge, and is countersigned by the defendant as clerk of the Court. These facts, *in the light of this demurrer,* must me accepted as verities. And as we have hereinbefore held, such a paper writing, when so signed by the presiding Judge and the clerk of the Court, imports a liability on the part of Abbeville County to pay the sum therein enumerated. It seems, therefore, that the first element exists. The second requires a fraudulent intent on the part of the accused. The indictment charges that the defendant made this paper writing with a fraudulent intent, to wit: to defraud Frank Nickles and Abbeville County. Chief Justice Rutledge, speaking for the Court, in the case of *The State* vs. *Washington,* 1 Bay, 152, said: "The only point on which we agree with the prisoner's

counsel is, that to make forgery felony under this act, it must be done with *intention to defraud.* It surely must. It is the essence of the crime." The indictment charges that the paper writing was forged, as it appears in the first count; and, in the second count, it is alleged that the name of the presiding Judge was forged. It seems to us that the indictment contains the second element. Now, as to the third element, viz: the falsity of the instrument. The indictment, in the first count, charges generally that the paper writing is a forgery; but in the second count, it is specially charged that it is a forgery, because the name of O. W. Buchanan, as presiding Judge, was forged. *"The name signed thereto is fictitious."* We do not agree with the Circuit Judge, that an instrument of writing had to be complete in all its parts in order to have made the defendant liable to the charge of forgery. We should always remember, in considering the sufficiency of the allegations of an indictment for forgery, that the essence of the alleged crime is the intent of the defendant to defraud. It would be straining after mercy, if a defendant, who had done all he could to make an instrument in writing, such as a witness pay certificate, appear to be valid, as a claim against Abbeville County, by forging the name of the presiding Judge thereto, should be allowed to defeat an instrument therefor, simply because all the steps which had to be taken by a holder thereof, in order to perfect the fraud, should not appear to be set forth in the indictment. The case of *The State* v. *Jones,* 1 McMullan, 236, supports this view. In the case cited, Jones, the defendant, offered to his landlord a check on the Bank of Charleston for $32, signed by T. Tupper, and payable to Jones, as bearer. His landlord, Mr. Harrison, declined to take it. Subsequently the check was found in the trunk of the accused. On trial, he was found guilty of forgery, although he had never collected the money on the check or presented it to the bank for payment. In the 9th volume of the Encyclopædia of Pleading and Practice, at page 561, it is said: "It is not necessary to state how the instrument could have been used for the pur-

pose of fraud; it is enough, if it appear from the character
of the instrument, together with the provisions of the stat-
ute, that it might have been so used in connection with other
facts, real or simulated, either then existing or with which
it was to be afterwards connected;" and in a note on page
562 of the same book, it is said: "When the instrument is
one shown to have legal effect, it is not necessary that it
should be shown to be a perfect one." So, too, in the case
of *The State* v. *Washington, supra,* it was held that, when
the defendant forged a receipt for certain interest on the
back of a State indent., when in fact he had not been paid
any such interest, that a conviction therefor for forgery
should be and was supported.

The Circuit Judge did not sustain the demurrer because of
the failure to allege that the defendant was clerk of Court,
because he said an amendment charging such fact could have
remedied the defect. Lest the State might feel called upon
to amend the indictment in this particular when the
case goes back, we will remark that we see no neces-
sity for this being done. The instrument in writing
alleged to have been forged is set out in the indictment, in
words and figures, and in this copy of the instrument in
question, the name of the clerk of the Court appears. This
fact is not controverted by the demurrer, but, in addition to
all this, the defendant, Bullock, is not indicted as clerk of
Court, or for forging the name of such clerk, and we see no
reason why the office held by the defendant should be set
forth. The indictment might as well be required to have
set out in it any other office the defendant might happen to
hold.

Having passed upon the grounds of appeal presented by
the State, we will now pass upon the suggestions of the re-
spondent, why the judgment of Circuit Judge should be af-
firmed. We cannot agree that, because a pay certifi-
cate for a witness was not in existence when the com-
mon law, the act of 1736-7; the act of 1801; the act
of 1845; the Revised Statutes of 1872; the General Statutes

of 1882; and the Revised Statutes of 1893, set forth the paper writing or writings of which one might be charged with forgery, that the forging of this witness pay certificate was not in the contemplation of the law governing forgery.   The truth of the whole matter is that the wisdom of the legislature of this State, in avoiding the enumeration of the different papers, which might be forged, and in using the words "writings or paper writing," is abundantly manifest.    These words are sufficiently broad and comprehensive to cover any paper writing or writings.

2. The paper writing in the indictment is not in the form prescribed by the statute, so says the respondent, and would for that reason be void.   We do not think so.   There is no form actually prescribed in the statutes of the State for a witness pay certificate.   All that is required, as before remarked, is that the presiding Judge will certify to the services, and the clerk countersign the certificate.   This has been done in effect in this case.

3. The paper writing set out in the indictment, so says the respondent, is void, because the statute makes no provision and prescribes no form—therefore, such ticket would be null and void.   We cannot agree to this suggestion of the respondent.   The indictment sets out in words and figures the paper writing, with the forgery of which the defendant, respondent, is charged.   It refers to this paper writing as "commonly called" a witness pay certificate.   This fact is admitted by the demurrer.   But, above all, the indictment gives effect to the provisions of the law relating to and governing witness pay certificates.

4. The respondent suggests that the Court of General Sessions had not jurisdiction to try the case because no warrant and affidavit appeared.   We cannot allow this suggestion to have any weight with us.   The Circuit Judge passed upon no such question, and the "Case" contains no statement of facts upon which to base it.   Independently of this, however, the recent case of *State* v. *Bowman*, 43 S. C., 108, is authority for our position.   We have

allowed the respondent to review that case, but we are forced to conclude that *State* v. *Bowman, supra,* was correctly decided, and is now reaffirmed.

5. We have already passed upon this suggestion.

It is the judgment of this Court, that the judgment of the Circuit Court quashing the indictment herein be reversed, and that the action be remanded to the Circuit Court for trial.